# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 02, 2014

Mr. Ryan B. Bennett
Kirkland & Ellis
300 N. LaSalle Street
Chicago, IL 60654

Mr. Stephen M. Gross
McDonald Hopkins
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304

Ms. Beth R. Heifetz
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

Ms. Deborah T. Kovsky-Apap
Pepper Hamilton
100 Renaissance Center
Suite 3600
Detroit, MI 48243

Mr. Christopher Landau
Kirkland & Ellis
655 Fifteenth Street, N.W.
Washington, DC 20005

Mr. Jason Michael Wilcox
Kirkland & Ellis
655 Fifteenth Street, N.W.
Washington, DC 20005

Re: Case No. 14-1719, *In re: Syncora Guarantee Inc., et al*
Originating Case No. : 2:13-cv-14305 : 13-53846

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                          Yours very truly,

                                          Deborah S. Hunt, Clerk


                                          Cathryn Lovely
                                          Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0141p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

IN RE: SYNCORA GUARANTEE INC.; SYNCORA CAPITAL ASSURANCE INC.,

        *Petitioners.*

No. 14-1719

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-14305—Bernard A. Friedman, District Judge.

Decided and Filed: July 2, 2014

Before: GIBBONS, KETHLEDGE, and STRANCH, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Christopher Landau, Jason M. Wilcox, KIRKLAND & ELLIS LLP, Washington, D.C., for Petitioners. Deborah Kovsky-Apap, PEPPER HAMILTON LLP, Southfield, Michigan, Beth Heifetz, JONES DAY, Washington, D.C., for Respondents.

 GIBBONS, J., delivered the opinion of the court, in which KETHLEDGE and STRANCH, JJ., joined. STRANCH, J. (pg. 10), delivered a separate concurring opinion.

---

**OPINION**

---

 JULIA SMITH GIBBONS, Circuit Judge. Syncora Guarantee Inc. and Syncora Capital Assurance Inc. petition this court for a writ of mandamus directing the United States District Court for the Eastern District of Michigan to adjudicate their appeal from an August 28, 2013, decision by the United States Bankruptcy Court for the Eastern District of Michigan. The issue in that appeal, which arises out of the City of Detroit's ongoing bankruptcy proceedings, is whether certain casino tax revenues that constitute a significant source of the city's funding were

1

correctly deemed to be property of the bankruptcy estate. The petition is granted, and the district court is ordered to adjudicate Syncora's appeal no later than July 14, 2014.

## I.

In order to understand the appeal before the district court, some recitation of the facts is necessary. Fortunately, the basic facts underlying this dispute, which we have gleaned from Syncora's petition, the city's response, and the parties' briefs in the district court, appear to be undisputed. In an effort to reinforce its finances and protect its pensions, the City of Detroit issued debt in 2005. Because it could not issue municipal bonds without running afoul of state law, the city created two not-for-profit service corporations and issued the debt instruments (called Certificates of Participation) through those corporations. At the city's direction, the service corporations sold the certificates and passed the proceeds of those sales on to the city, which used the cash to fund its pensions. The city then provided the service corporations with periodic funding to cover the principal and interest payments owed to the debtholders.

Some of those certificates had fixed interest rates, but others used floating interest rates to calculate the accrual of interest. The floating interest rates exposed the city to risk. If market interest rates remained low, the city (through the service corporations) would owe investors little interest. But if interest rates increased, the city would owe investors substantial interest payments each month. To hedge this risk, the service corporations executed interest-rate swaps with two banks, referred to here as the swap counterparties. Those swaps, which constitute a form of insurance, effectively converted the floating-rate debt into fixed-rate debt. When market interest rates fell below a certain threshold, the swaps obligated the city to pay the swap counterparties a certain amount of money, depending on how low the market interest rates were. The cost of those swap payments ostensibly would be offset by the low interest rates that the city owed to investors who held the certificates. But if market interest rates ever rose, the city would owe the debtholders more money in the form of greater interest payments. The interest-rate swaps insured against that risk by requiring the swap counterparties to make payments to the city whenever interest rates rose above the agreed-upon threshold. The city could then use those swap payments to pay the high interest payments owed to the debtholders.

Because of the city's dire finances, however, investors were unwilling to buy the certificates and banks were unwilling to execute the interest-rate swaps unless an insurer guaranteed the city's obligations. Syncora, a monoline insurer, enhanced the city's creditworthiness by insuring some of the city's obligations under both the certificates and the swaps.[1] If the city (through the service corporation) failed to make a required payment under either the certificates or the swaps, Syncora promised to make that payment on the city's behalf. As of August 2013, says Syncora, its exposure on the certificates was $176 million and its exposure on the swaps was another $100 million.

A credit downgrade in 2009 gave the swap counterparties the right to terminate the swaps and demand a termination payment in excess of $300 million. To avoid that potential calamity, the city entered into a collateral agreement with the swap counterparties, and Syncora consented to that agreement. The swap counterparties promised not to invoke their immediate right to terminate the swaps and demand a termination payment, and in return the city made two significant commitments. First, the city gave the swap counterparties an optional early termination right, which permitted the swap counterparties to terminate the swaps at any time and for any reason. This effectively ended the city's hedging protection because it allowed the swap counterparties to terminate the swaps if interest rates ever rose high enough to require the swap counterparties to make payments to the city under the swaps.

Second, the city and the swap counterparties established a fairly complex procedure to ensure that the city met its obligations under the swaps. The intricacies of that procedure gave rise to the dispute in the bankruptcy court between the city and Syncora that is now before the district court. The procedure, which the city calls a "lockbox" system, bypassed the service corporations and created a direct relationship between the city and the swap counterparties. The lockbox consisted of two separate bank accounts at U.S. Bank—a Holdback Account and a General Receipts Subaccount. The city receives approximately $500,000 per day (or $15 million per month) from several casinos in the form of excise taxes. Under the lockbox arrangement, those taxes are paid into the General Receipts Subaccount rather than to the city. Meanwhile the

---

[1] Syncora also purchased some of the certificates issued by the service corporations, but those purchases are not relevant to this petition.

city makes monthly payments to the Holdback Account equal to its obligations under the interest-rate swaps. Each month U.S. Bank holds the casino revenues in the General Receipts Subaccount until the city deposits its swap obligations (about $4 million per month) into the Holdback Account, at which point U.S. Bank releases the casino tax revenues to the city. U.S. Bank then releases the city's swap obligations to the swap counterparties on a quarterly basis.

To enforce the agreement's terms, the collateral agreement authorized the swap counterparties to serve notice on U.S. Bank requiring the bank to "trap" all of the funds held in the General Receipts Subaccount. Such notice could be served whenever there was a default or termination event under the swaps. Once the funds have been trapped in the General Receipt Subaccount, the swap counterparties may exercise their rights under the agreement. The swap counterparties may not instruct U.S. Bank to transfer funds from the General Receipts Subaccount to the Holdback Account; rather, the swap counterparties can access the casino tax revenues only by obtaining an appropriation from the city. If the city refuses to appropriate the money, the swap counterparties may seek a writ of mandamus.

In June 2013 Syncora notified U.S. Bank that an "event of default" had occurred and that the bank should not release the casino tax revenues in the General Receipts Subaccount. Over the city's objection U.S. Bank refused to release those revenues to the city. The city brought suit in the Wayne County Circuit Court to obtain declaratory relief, and that court granted the city's *ex parte* motion for a temporary restraining order requiring U.S. Bank to release the funds. Syncora then removed the case to the United States District Court for the Eastern District of Michigan. When the city filed for bankruptcy protection under Chapter 9 of the Bankruptcy Code one week later, the district court transferred the Detroit–Syncora litigation to the bankruptcy court.

In an oral ruling pronounced on August 28, 2013, the bankruptcy court held that Syncora had no right to trap the casino tax revenues paid into the General Receipts Subaccount because those taxes were property of the city and were thus protected by the automatic stay that had gone into effect under 11 U.S.C. § 362(a)(3). Syncora timely appealed that decision to the United States District Court for the Eastern District of Michigan on September 10, 2013, and the parties

finished briefing the appeal in November 2013. But the district court never adjudicated the appeal, and it has languished in that court for seven months.

Meanwhile, in December 2013 the bankruptcy court held that the city was eligible to seek protection under Chapter 9 of the Bankruptcy Code. The bankruptcy court later certified its decision for direct appeal to this court, and on February 21, 2014, this court granted several petitions from petitioners "seek[ing] to take a direct appeal to this court from the December 5, 2013 decision of the bankruptcy court finding that the City of Detroit is eligible to be a debtor under Chapter 9 of the Bankruptcy Code and that its bankruptcy petition was filed in good faith." On April 4, 2014, the district court *sua sponte* entered an order staying Syncora's appeal in that court pending this court's review of the bankruptcy court's eligibility determination. Syncora sought reconsideration of the stay order one month later, but the district court denied that motion. Syncora filed this petition for a writ of mandamus on June 10, 2014. We ordered the city to respond to Syncora's petition, which is now ripe for consideration.

## II.

The All Writs Act, 28 U.S.C. § 1651, authorizes the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That authority allows this court to "issue writs of mandamus in aid of its existing jurisdiction or in aid of its future appellate jurisdiction." *Blay v. Young*, 509 F.2d 650, 651 (6th Cir. 1974). But mandamus relief is an "extraordinary remedy, only infrequently utilized by this court." *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997). When deciding whether to grant such extraordinary relief, we consider a number of factors, including (1) whether the party seeking the writ has adequate other means to attain the desired relief, (2) whether the petitioner will be irreparably damaged or prejudiced if the writ is not granted, (3) whether the district court's order is clearly erroneous as a matter of law, (4) whether the district court's order incorporates an oft-repeated error or manifests a persistent disregard of the federal rules, and (5) whether the district court's order raises new and important problems, or issues of law of first impression. *Id.* (citing *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984)). Ours is a flexible approach, and "[w]e have never required that every element be met in order for mandamus to issue." *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005).

Although mandamus is an "extraordinary remedy," these are extraordinary circumstances, and we do not evaluate Syncora's petition in a vacuum. The City of Detroit and its tens of thousands of creditors are engaged in bankruptcy proceedings of enormous scope and complexity. The bankruptcy court is moving the matter along swiftly. Under the current schedule the bankruptcy court will begin to consider the city's proposed plan of adjustment on August 14, 2014. In an effort to accommodate that timetable, a panel of this court will hear oral argument in the direct appeals concerning the city's eligibility for bankruptcy protection on July 30, 2014.

Mandamus is justified here for two interrelated reasons: to protect this court's future appellate jurisdiction and to ensure that the district court's stay order does not deprive Syncora of a meaningful opportunity to obtain timely review of the bankruptcy court's decision. *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 352 (1976), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996); *In re Sharon Steel Corp.*, 918 F.2d 434, 436–37 (3d Cir. 1990); *Blay*, 509 F.2d at 651. The deprivation of meaningful and timely appellate review itself constitutes substantial and irreparable prejudice, *see In re Bendectin*, 749 F.2d at 304, and we undertake no inquiry at this point as to whether or not the bankruptcy court correctly decided the underlying dispute.

The district court stayed Syncora's appeal "[i]n light of the prospect that any decision of the bankruptcy court may be rendered moot by a subsequent decision of the Sixth Circuit Court of Appeals regarding appellant's eligibility for Chapter 9 bankruptcy." But the prospect that a panel of this court may declare the city to be ineligible for the protections of Chapter 9 of the Bankruptcy Code is no reason to stay other appeals that present independent questions of law.

The problem posed by the district court's stay is that it fails to account for all of the potential implications of that court's inaction. If a panel of this court ultimately determines that the city is not eligible for bankruptcy protection, the district court's stay may serve its purpose of conserving judicial resources. But judicial resources are not so scarce as to justify the risks that arise from the stay: If this court affirms the bankruptcy court's eligibility determination (or if settlement discussions affect the prosecution of those appeals), Syncora may be left without sufficient time to obtain appellate review of the bankruptcy court's August 2013 decision with

respect to the casino tax revenues. *Cf. John B. v. Goetz*, 531 F.3d 448, 458 (6th Cir. 2008) (emphasizing that mandamus is appropriate when other available means of relief are not adequate). We must intervene to protect our appellate jurisdiction and to ensure that the district court does not deprive Syncora of its statutory right to judicial review. *See McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970).

The city contends that mandamus relief is not appropriate because Syncora's doomsday concerns are "speculative." But mandamus relief is not restricted to petitioners who can establish beyond all doubt that irreparable harm will occur unless the writ issues. This court may "exercise its mandamus jurisdiction when a party is *in danger* of harm that cannot be adequately corrected on appeal and has no other adequate means of relief." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009) (emphasis added). The purpose of this rule is to "prevent[] the end-run around the final judgment rule that might otherwise occur." *Id.* Syncora is not attempting to circumvent the final judgment rule; it implores this court to compel the district court to issue a final judgment. That is perhaps the core purpose of the writ. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662 (1978). Syncora therefore is not barred from seeking the writ solely because the substantial risk of prejudice might not be realized.[2]

The risk of prejudice is both genuine and substantial. If the bankruptcy court confirms the city's plan of adjustment before Syncora obtains judicial review of the merits of its appeal, Syncora may be left with no option but to seek an emergency stay of that plan. That is hardly the process envisioned by the Federal Rules of Bankruptcy Procedure, which seek to expedite bankruptcy appeals by requiring parties to file their appeals within fourteen days rather than the normal thirty days. *Compare* Fed. R. Bankr. P. 8002(a), *with* Fed. R. App. P. 4(a)(1)(A). Nor is it consistent with this court's recurrent efforts to facilitate orderly bankruptcy appeals by

---

[2] Syncora also is not barred from obtaining mandamus relief on account of its failure to seek interlocutory review of the district court's stay. *See In re Chimenti*, 79 F.3d 534, 538–39 (6th Cir. 1996) ("[T]he failure to seek interlocutory review under § 1292(b) does not automatically preclude issuance of the writ of mandamus."). Although "the better practice" might have been for Syncora to attempt to obtain interlocutory review of the district court's stay order, "it is plain that any attempt to obtain certification in this case would have been futile." *Id.* at 539–40. The district court summarily denied Syncora's motion to reconsider the stay and has not adjudicated requests by Syncora to certify two other appeals for direct review in this court. We therefore share Syncora's view that a certification motion in this case would not have been fruitful. *See In re Briscoe*, 448 F.3d 201, 212 n.7 (3d Cir. 2006) ("On the record before us, it seems sufficiently clear that the District Court would have refused to certify an interlocutory appeal or enter a Rule 54(b) order, thus leaving such review an impractical avenue for petitioners to pursue.").

interpreting the final judgment rule "'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *In re Cottrell*, 876 F.2d 540, 541–42 (6th Cir. 1989) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)). The reason for that pragmatism is "'to avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved.'" *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)). Insofar as a debtor's plan of adjustment incorporates final decisions reached by the bankruptcy court, any appeals from those decisions should generally be reviewed *before* the bankruptcy court confirms that plan.

The question presented in Syncora's appeal—whether a substantial revenue stream is rightly considered property of the bankruptcy estate—is precisely the type of issue that should be reviewed before the bankruptcy court confirms the plan of adjustment. Without a final decision on that question, the city will not know what amount its coffers will contribute to the bankruptcy estate, the creditors cannot know the size of the pie they are being asked to share, and the bankruptcy court cannot be confident that it is considering a legally and financially viable plan. An orderly bankruptcy process depends on a concomitantly efficient appeals process, and the district court's stay of Syncora's appeal improperly thwarts both processes. *Cf. Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (stating that an important consideration in determining the propriety of the writ is whether the district court's action or inaction "has thwarted or tends to thwart appellate review of the [underlying] ruling").

We therefore conclude that Syncora has satisfied its burden to show that the "extraordinary writ" is warranted. The district court's stay threatens to deprive this court of an opportunity to consider the merits of Syncora's appeal. It also presents the specter that Syncora may be forced to abandon its appeal and instead to seek appellate review of the bankruptcy court's decision in the form of an emergency motion for a stay of the confirmation plan. In a bankruptcy case of such scope and complexity, that is not the proper way to adjudicate appeals that implicate legal questions of fundamental importance to the bankruptcy proceedings.

## III.

We grant the petition for a writ of mandamus. To allow this court to rule on this matter in a timely fashion, the district court is directed to adjudicate Syncora's appeal no later than July 14, 2014. If the losing party wishes to obtain review of the district court's decision in this court, that party should promptly file its notice of appeal—preferably within three days of the district court's decision. The merits panel can then set a briefing schedule to ensure a timely disposition of that appeal.

No. 14-1719         *In re Syncora Guarantee, Inc., et al.*                    Page 10

---

## CONCURRENCE

---

JANE B. STRANCH, Circuit Judge, concurring. Governing case law obligates us to protect this court's future appellate jurisdiction and ensure that a district court stay order does not deprive a party to bankruptcy litigation of a meaningful opportunity for appellate review of a bankruptcy court decision. I concur to emphasize that our decision is distinct from the facts alleged or the merits argued by the parties; this grant is to assure preservation of orderly appellate review. Our decision, moreover, assures the availability of appellate review so that the entire process—ongoing in the bankruptcy, district, and appellate courts and in court-ordered mediation—may continue toward a fruitful conclusion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-1719

IN RE: SYNCORA GUARANTEE INC.; SYNCORA
CAPITAL ASSURANCE INC.,
      Petitioners.

```
          FILED
       Jul 02, 2014
   DEBORAH S. HUNT, Clerk
```

Before: GIBBONS, KETHLEDGE, and STRANCH, Circuit Judges.

## JUDGMENT

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Michigan.

    THIS CAUSE was submitted the petition for a writ of mandamus, the City of Detroit's response in opposition, and the Petitioners' reply in support.

    IN CONSIDERATION WHEREOF, it is ORDERED that the petition for a writ of mandamus is GRANTED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk